# EXHIBIT H

Page 1

```
 1              Anthony Ray Russ, Sr.
 2      IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF GEORGIA
 3              ATLANTA DIVISION
 4
 5   ROBERT WEINTRAUB, as            )
     Natural Parent and              )
 6   Surviving Heir of WILLIAM       )
     WEINTRAUB, deceased, and        )
 7   as Administrator of the         )  Civil Action
     ESTATE OF WILLIAM               )  File No.
 8   WEINTRAUB,                      )  1:15-CV-01213-AT
                                     )
 9              Plaintiffs,          )
                                     )
10        -v-                        )
                                     )
11   ADVANCED CORRECTIONAL           )
     HEALTHCARE, INC., a             )
12   foreign corporation, and        )
     PTS of AMERICA, LLC, a          )
13   foreign limited liability       )
     corporation,                    )
14                                   )
                Defendants.          )
15
16          The videotaped deposition upon oral
17   examination of ANTHONY RAY RUSS, SR., a witness
18   produced and sworn before me, Sherry D. Lenn, RPR, and
19   Notary Public in and for the County of Warrick, State
20   of Indiana, taken on behalf of the Plaintiffs at the
21   Le Merigot Hotel, 615 N.W. Riverside Drive,
22   Evansville, Indiana, on April 15, 2016 at 1:30 p.m.,
23   pursuant to the Federal Rules of Civil Procedure.
24
25   Job No. 104938
```

1    Anthony Ray Russ, Sr.
2    you know, like wet.  And, you know, so --
3  Q  Did he look right to you?
4  A  No, he didn't look right at all.  And I -- you
5     know, I just couldn't understand why they hadn't
6     sent the guy out to the hospital to be checked out
7     like they do with anybody that they --
8  Q  Had you observed before patients with things like
9     this getting referred out to the ER?
10 A  Oh, yeah.  We -- you know, we sent -- it seemed
11    like it was every other day we'd sent one -- one of
12    the PTS prisoners out to the hospital.  And a lot
13    of the cases they were just making up, you know,
14    something to try to stay there and not be shipped
15    off to whatever jail they were going to be taken to
16    next or dropped off to next.  But you can ignore --
17    you know, if you ignore it and there's something
18    really radically wrong with them or wrong with
19    them, he's got to be treated whether he's a
20    prisoner or not.
21 Q  Well, was it hard -- I mean, can you give us an
22    idea of the obvious -- and your hands are back up.
23 A  Oh, I'm sorry.
24 Q  That's okay.  Can you give us an idea -- I mean,
25    was it obvious the guy -- to you -- would anybody

Page 18

Anthony Ray Russ, Sr.

2  have to really come study him closely to tell
3  something was off?
4       MS. INSLEY:  Object to form, leading.
5       MR. CONLEY:  I'll rephrase it.
6  Q  Did it -- was it readily apparent or observable to
7     you the conditions you've described?
8  A  His color wasn't right at all.  He was pale.  He
9     was what we call cold and clammy, and, you know, it
10    just wasn't right.  And I just could not understand
11    -- you know, I've seen guys sent out for a lot less
12    than -- than what he was sent out for --
13       MS. INSLEY:  Object to form.
14 A  -- or what he should have been sent out for.
15       MS. INSLEY:  Excuse me.  Object to form,
16    responsiveness.  It's nonresponsive.
17 Q  Are you -- do you have a clear memory of Mary, the
18    nurse, saying maybe this will shut him up?
19 A  Yeah.
20       MS. INSLEY:  Object to form, leading.
21 Q  Is the testimony you've given today about what you
22    recall the nurse Mary saying to you clear in your
23    mind?
24 A  Yes.
25 Q  During this -- during the period from when you

TSG Reporting - Worldwide
(877) 702-9580