# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ROBERT WEINTRAUB, as Natural Parent and Surviving Heir of WILLIAM WEINTRAUB, deceased, and as Administrator of the ESTATE OF WILLIAM WEINTRAUB, | ) ) Civil Action ) ) File No. 1:15-cv-01213-AT |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ADVANCED CORRECTIONAL HEALTHCARE, INC. a foreign corporation, and PTS of AMERICA, LLC, a foreign limited liability corporation, | ) ) ) ) ) ) |
| Defendants. | ) |

## PLAINTIFFS' STATEMENT OF DISPUTED MATERIAL FACTS

COMES NOW Plaintiff Robert Weintraub, both individually as natural parent and surviving heir of William Weintraub, and as Administrator of the Estate of William Weintraub, and pursuant to Local Rule 56.1(B)(2)(b) submits his Statement of Material Disputed Facts. All showing that numerous material facts are disputed and present a genuine issue for trial, making summary judgment inappropriate here.

1.  A GBI-requested autopsy confirmed that Weintraub did not die from some sudden trauma en route: he died of a perforated duodenal ulcer that had

1

festered for so long it caused 1600 cc of fecal matter, necrosis of the esophagus, and widespread sepsis to eat away at Weintraub's abdominal cavity and cause intense suffering and death. See Autopsy Report, Def. Brief, Exhibit I.

2. Dr. Weintraub was shackled at the time of his death. Davis Depo. pp. 57/24–58/3, excerpts attached to Plf. Brief as Exhibit C.

3. PTS had a contract with the Horry County Sheriff to deliver Dr. Weintraub safely and humanely to South Carolina. See PTS Prisoner Receipt, attached to Def. Brief as Exhibit F (Delivery Location: Horry County Sheriff's Office); Fax from Linda Shelley of the Horry County Sheriff's Office to PTS of America, LLC (memorializing engagement of PTS and providing necessary documentation for PTS to extradite Dr. Weintraub to South Carolina), attached to Def. Brief as Exhibit E; Exh. 1 to Mark Davis Deposition (PTS Website "Services" page), attached to Plf. Brief as Exhibit B ("Moving over 100,000 detainees per year, we understand safety! We got the extra mile to ensure staff and detainee safety every step of the way"; "Our Agents understand the importance of safety, timeliness, and efficiency. They are trained and compensated to achieve excellence in each of these categories"); "We offer unparalleled service for all forms of your prisoner transportation needs. Our core focus is Safety, Timeliness and Efficiency. From beginning to end, PTS staff will coordinate everything and provide around

the clock oversight and support to our agents on the road"); PTS Policy Manual, p. 26–28, attached to Plf. Motion as Exhibit D ("To provide a safe, secure, and humane environment for the transportation of special needs Prisoners PTS shall provide the best possible special care that corresponds to the particular problem or physical/mental impairment of the prisoner").

    4.    PTS holds authority from the Federal Motor Carrier Safety Administration as a "Motor Passenger Common Carrier" with motor carrier docket number MC689407. See FMCSA Registration for PTS, p. 1 ("Common Authority: Active") and p. 8 (Authority Type:  Motor Passenger Common Carrier, reinstated 11/29/12), attached to Plf. Brief as Exhibit I.

    5.    PTS' authority has been in good standing since November 2012, well before the subject events. See FMCSA Registration for PTS, p. 1 ("Common Authority: Active") and p. 8 (Authority Type:  Motor Passenger Common Carrier, reinstated 11/29/12), attached to Plf. Brief as Exhibit I.

    6.    Weintraub was, indisputably, a "passenger" being transported by PTS.  See Def. Brief, p. 5 ("on April 24, 2014, the decedent boarded another PTS van….").

    7.    All ten inmates being transported with Dr. Weintraub could tell that something was wrong with his health. See GBI Investigative Summaries Bates

Nos. WEINTRAUB000001, WEINTRAUB000004, WEINTRAUB000006, WEINTRAUB000009, WEINTRAUB000011, WEINTRAUB000017, WEINTRAUB000021, WEINTRAUB000026, WEINTRAUB000030, WEINTRAUB000034, excerpts attached to Plf. Response to Def. Statement of Facts as Exhibit A; Exh. 9 to Danielle Board depo., summary of GBI interview of Holly Dean (Weintraub was "sweaty, white in color, groaning and looking like the 'walking dead'"); Exhibit 11 to Mary Capps depo., summary of GBI interview of Judy Waldrep (that he was groaning, "off" mentally and looked like "death"); and Exh. 10 to Mary Capps depo., summary of GBI interview of Ann Bremen (that he was "complaining of pain the whole time," pale, sweating profusely, and had "bulging eyes").

8. Numerous inmates believed at the time that they were being loaded for transport that Dr. Weintraub should not have been loaded at that time because of his unhealthy appearance. See GBI Investigative Summaries Bates Nos. WEINTRAUB000017, WEINTRAUB000022, excerpts attached to Plf. Response to Def. Statement of Facts as Exhibit A.

9. Several inmates saw Dr. Weintraub sweating abnormally. See GBI Investigative Summaries Bates Nos. WEINTRAUB000001, WEINTRAUB000006, WEINTRAUB000009, WEINTRAUB000011,

4

WEINTRAUB000018, WEINTRAUB000030, WEINTRAUB000034, excerpts attached to Plf. Response to Def. Statement of Facts as Exhibit A; Exh. 10 to Mary Capps depo., summary of GBI interview of Ann Bremen (that he was "complaining of pain the whole time," pale, sweating profusely, and had "bulging eyes").

10. All three PTS agents heard Dr. Weintraub moaning and groaning before they loaded him into the PTS transport vehicle. See Roberts Depo. pp. 42/14–20; Davis Depo. pp. 29/19–23.

11. Agent Davis noticed that Dr. Weintraub's pants were falling off of him. See Davis Depo. pp. 29/24–30/2, excerpts attached to Plf. Brief as Exhibit C.

12. Davis also noticed that Dr. Weintraub was sweating "bullets". See Davis Depo. pp. 27/21–28/5, excerpts attached to Plf. Brief as Exhibit C.

13. Davis noticed that Dr. Weintraub was pale. Id.

14. It is not possible to fake sweat. Id.

15. It is not possible to fake being pale. Id.

16. Dr. Weintraub told Agent Davis that he was in pain. Roberts Depo. pp. 74/13–8, excerpts attached to Plf. Brief as Exhibit A.

17. Dr. Weintraub asked for Pepto-Bismol prior to being loaded into the PTS van. Id. at 40/7–22.

5

18. All three PTS agents mocked Dr. Weintraub. See Davis Depo. pp. 43/12–45/12, excerpts attached to Plf. Brief as Exhibit C; Roberts Depo. pp. 42/18–43/11, 54/9–24, 78/25–2, excerpts attached to Plf. Brief as Exhibit A.

19. Davis admitted that their mockery of Dr. Weintraub violated PTS policies. Davis Depo. pp. 47/4–9, excerpts attached to Plf. Brief as Exhibit C.

20. Davis admitted that it was inhumane treatment to mock Dr. Weintraub. See Mark Davis Depo. pp. 47/4–9, excerpts attached to Plf. Brief as Exhibit C.

21. Arnold admitted that Dr. Weintraub did not appear to be "right in the head" when the PTS agents arrived at DCDC. See GBI Investigative Summaries WEINTRAUB000046, excerpts attached to Plf. Response to Def. Statement of Facts as Exhibit A.

22. No PTS agent received medical authorization to transport Dr. Weintraub. See Davis Depo. pp. 32/12–14, 52/9–15, excerpts attached to Plf. Brief as Exhibit C; Roberts Depo. pp. 69/6–15, 72/24–73:3, excerpts attached to Plf. Brief as Exhibit A.

23. No PTS agent received any form or document that purported to provide medical authorization to transport Dr. Weintraub. See Davis Depo. pp.

32/9–23, 52/9–15, excerpts attached to Plf. Brief as Exhibit C; Roberts Depo. pp. 69/6–15, 72/24–73/3, excerpts attached to Plf. Brief as Exhibit A.

24.     No PTS agent spoke with a doctor who cleared Dr. Weintraub for travel. See Roberts Depo. pp. 40/7–17, excerpts attached to Plf. Brief as Exhibit A.

25.     No PTS agent spoke with a nurse who cleared Dr. Weintraub for travel. See Roberts Depo. pp. 69/6–18, excerpts attached to Plf. Brief as Exhibit A.

26.     No doctor cleared Dr. Weintraub for travel. Dr. Everson Depo. pp. 121/4–19, excerpts attached to Def. Brief as Exhibit K.

27.     No nurse cleared Dr. Weintraub for travel. See Capps, R.N. Depo. pp. 9/16–10/10, excerpts attached hereto as Exhibit A; Board, R.N. Depo. pp. 88/17–90/8, excerpts attached hereto as Exhibit B.

28.     No agent or employee of Defendant Advanced Correctional Healthcare, Inc. cleared Dr. Weintraub for travel. See Cruz Dep. 106/8–14, excerpts attached hereto as Exhibit C; Dr. Everson Depo. pp. 121/4–19, excerpts attached to Def. Brief as Exhibit K; Stacy, LPN. Depo. pp. 80/11–18, excerpts attached hereto as Exhibit D; Capps, R.N. Depo. pp. 9/16 – 10/10, excerpts attached hereto as Exhibit A.

29.     None of the PTS agents called their trip manager to alert them about Dr. Weintraub's symptoms or to receive instruction for how to handle Dr.

Weintraub's condition. See Davis Depo. pp. 32/15–23, 60/5–13, excerpts attached to Plf. Brief as Exhibit C; Roberts Dep. at 41/4–16, excerpts attached to Plf. Brief as Exhibit A.

30.   PTS policies required its agents to be aware of Dr. Weintraub's changes in mood or attitude. See PTS Policy Manual, p. 14, attached to Plf. Motion as Exhibit D ("Agents should take note of prisoner moods and/or attitude changes").

31.   PTS policies required its agents to be aware of any unusual prisoner sounds or movements.  See PTS Policy Manual, p. 14, attached to Plf. Motion as Exhibit D ("Agents should remain alert and take note of any unusual prisoner sounds or movements").

32.   PTS policies state that: "[i]n the event that a prisoner develops a medical condition that is life threatening or sustains a life threatening injury this constitutes an emergency and the agent may transport the prisoner to an emergency room immediately."  See PTS Policy Manual, p. 27, attached to Plf. Motion as Exhibit D.

33.   PTS policies required its agents to contact PTS headquarters for instructions if PTS agents arrive at a pick-up and discover that a special needs

prisoner is to be transported. See PTS Policy Manual, p. 27, attached to Plf. Motion as Exhibit D.

34.     PTS policies required its agents to practice constant vigilance during the movement of prisoners from vehicles and facilities.  See PTS Policy Manual, p. 24, attached to Plf. Motion as Exhibit D.

35.     PTS's "Policy on Humane Treatment of Inmates" required that all PTS employees "follow policies, procedures and training to the letter, and similarly required that Prisoners be free from harassment, that they have the right to receive medical care and treatment, and the right to be transported in a safe, secure and humane manner. See PTS Policy on Humane Treatment of Inmates, Exhibit 3 to the Davis Depo, attached to Plf. Brief as Exhibit F.

36.     The PTS agents were aware of these policies on April 24 and April 25, 2014. See Roberts Depo. pp. 14/13–22/24, excerpts attached to Plf. Brief as Exhibit A; Davis Depo. pp. 12/3–13/8, excerpts attached to Plf. Brief as Exhibit C.

37.     Roberts admitted that the "job" of a PTS agent includes driving, and to "make sure the people that we're carrying are fed," that "they stay safe," and that "if they request medical attention, do what we can to get them medical attention."  See Roberts Depo. p. 10/6-15.

38.     The PTS agents did not check on Dr. Weintraub after departing DCDC. See Nolan Roberts Depo. pp. 43/2–18, 45/23–9, 47/4–13, excerpts attached to Plf. Brief as Exhibit A.

39.     The PTS agents did not provide Dr. Weintraub with requested medical care. See Nolan Roberts Depo. pp. 76/23–77/14, 43/2–45/10, excerpts attached to Plf. Brief as Exhibit A.

40.     The PTS agents did not check on Dr. Weintraub at any of the stops made between DCDC and Union County. See Nolan Roberts Depo. pp. 45/23–9, 47/4–13, excerpts attached to Plf. Brief as Exhibit A.

41.     Dr. Weintraub continued moaning and groaning during the trip from DCDC to Union County. GBI Investigative Summaries, Bates Nos. WEINTRAUB000002, WEINTRAUB000004, WEINTRAUB000032, excerpts attached to Plf. Response to Def. Statement of Facts as Exhibit A.

42.     Numerous inmates requested assistance for Dr. Weintraub prior to arrival at the Union County Sheriff's Office ("Union County"). See GBI Investigative Summaries, Bates No. WEINTRAUB0000036, excerpts attached to Plf. Response to Def. Statement of Facts as Exhibit A.

43.     Inmates asking for help for Dr. Weintraub upon arrival at Union County were told by either Mark Davis or Nolan Roberts to wait for Trevis Arnold

to return from escorting female inmates to the restroom. See GBI Investigative Summaries, Bates No. WEINTRAUB000027, excerpts attached to Plf. Response to Def. Statement of Facts as Exhibit A.

44. Trevis Arnold did not check on Dr. Weintraub immediately upon arrival at the Union County Sheriff's Office. See GBI Investigative Summaries, Bates No. WEINTRAUB000044, excerpts attached to Plf. Response to Def. Statement of Facts as Exhibit A.

45. Trevis Arnold did not check on Dr. Weintraub until after he both transferred custody of Ann Marie Nettles Bremen to Union County and escorted the remaining two female detainees to the restroom and back. Id.

46. The PTS Agents had numerous opportunities to check on Dr. Weintraub between Union County and DCDC prior to his death. See PTS Activities Log, attached to Def. Brief as Exhibit F.

Respectfully submitted, this 27th day of May, 2016.

CONLEY GRIGGS PARTIN LLP

/s/ Cale Conley
CALE CONLEY
Georgia Bar No. 181080
RANSE M. PARTIN
Georgia Bar No. 556260
ALYSSA BASKAM
Georgia Bar No. 776157

        1380 West Paces Ferry Road, N.W.
        Suite 2100
        Atlanta, Georgia 30327
        Phone: 404-467-1155
        Fax: 404-467-1166
        cale@conleygriggs.com
        ranse@conleygriggs.com
        alyssa@conleygriggs.com

        PAJCIC & PAJCIC, PA

        /s/ Curry Pajcic
        CURRY GARY PAJCIC (*pro hac vice*)
        Florida Bar No. 0021301
        ROBERT LINK (*pro hac vice*)
        Florida Bar No. 200743

        1 Independent Drive
        Suite 1900
        Jacksonville, FL 32202
        Phone: 904-358-8881
        Fax: 904-354-1180
        curry@pajcic.com
        bob@pajcic.com

        ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF PROPER FORMAT**

This is to certify that the foregoing was prepared in Times New Roman, 14-point font, in accordance with Local Rules 5.1 and 7.1(D).

This 27th day of May, 2016.

                                          **CONLEY GRIGGS PARTIN LLP**

                                          /s/  *Alyssa Baskam*
                                          ALYSSA BASKAM
                                          Georgia Bar No. 776157

## **CERTIFICATE OF SERVICE**

This is to certify that I have this date filed and served the foregoing **PLAINTIFFS' STATEMENT OF DISPUTED MATERIAL FACTS** through the Court's CM/ECF filing system which will automatically serve a copy of said pleading upon all counsel of record.

This 27th day of May, 2016.

                                          **CONLEY GRIGGS PARTIN LLP**

                                          /s/  *Alyssa Baskam*
                                          ALYSSA BASKAM
                                          Georgia Bar No. 776157